**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YI FANG CHEN, individually and on behalf of her minor children M.P., Ma.P., and P.P., <br><br> Plaintiff, <br><br> v. <br><br> ZOHRAN MAMDANI, in his official capacity as Mayor of the City of New York; KAMAR H. SAMUELS, in his official capacity as Chancellor of the New York City Department of Education; and the NEW YORK CITY DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 1:26-cv-03355 |

**COMPLAINT**

**INTRODUCTION**

1.      M.P. is the son of Chinese immigrants. He is also a high-achieving New York City public school student who seeks admission to Stuyvesant High School, one of the most selective public schools in the nation. He recently took the Specialized High School Admissions Test (SHSAT) and ranked Stuyvesant as his first choice. He missed admission by three points. But for the City's racially motivated set-aside of 20 percent of Stuyvesant's seats for students who scored more than 60 points below M.P., he would have been admitted.

2.      New York City's specialized high schools (SHSs) are among the most academically rigorous public high schools in the nation. Starting in 2020, the City began reserving 20 percent of its SHS seats for a separate admissions pathway—the Discovery program—that excludes students based on criteria the City purposefully selected to change the racial composition of those schools. The City adopted and continues to enforce that policy in an

effort to reduce the number of Asian-American students and increase the number of black and Hispanic students admitted to the SHSs.

3.    Because of that racially discriminatory policy, M.P., a Chinese American, lost the opportunity to compete for all available seats and was not admitted to his preferred school. Unless the policy changes, his siblings Ma.P. and P.P. will face the same discrimination.

4.    Plaintiff Yi Fang Chen—the mother of M.P., Ma.P., and P.P.—came to the United States to build a better life for herself and her children. She has lived and worked in New York City for decades and raised her family with the expectation that merit—not race—would determine their opportunities in public education.

5.    Chen brings this action to vindicate her and her children's rights under the Equal Protection Clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964, which forbid the government from structuring admissions policies to disadvantage students because of their race.

6.    In *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), the Supreme Court held that government officials may not manipulate admissions systems—whether through explicit classifications or facially neutral proxies—to produce race-based outcomes. Defendants have done exactly that here. Chen requests declaratory and injunctive relief to remedy that constitutional violation and to restore a race-neutral admissions process in which students like M.P. can compete on equal terms.

**JURISDICTION AND VENUE**

7.    This action arises under the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. The Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal

question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1)–(2). Defendants reside within this district and a substantial part of the events giving rise to the claim have occurred or will occur in the Southern District of New York.

## PLAINTIFF

9.  Plaintiff Yi Fang Chen was born in China; she moved to the United States in 1996 as a teenager. Although she came to this country speaking little English, she worked hard and eventually earned a Ph.D. in statistics from Stanford University. She has been naturalized as a U.S. citizen and now works as a data scientist in Manhattan.

10.  Chen and her husband, a naturalized immigrant from Hong Kong, have three children and live in Brooklyn. Their oldest son, M.P., is an eighth grader at I.S. 239, Mark Twain Intermediate School for the Gifted and Talented. Chen and her family have long had the goal that M.P. would attend an SHS. For years they have planned for him to seek admission to Stuyvesant High School, the most selective of the schools and the one at which they think M.P. will receive the best education and have the best opportunities. Accordingly, when he registered for the SHSAT, M.P. listed Stuyvesant as his top choice.

11.  M.P. took the SHSAT in the fall of 2025. He was notified in March 2026 that his score was 558. Although a score of 558 would have been sufficient to gain admission to Stuyvesant for the 2025–26 school year, when the cutoff was 556, it was three points below this year's Stuyvesant cutoff of 561.

12.  Stuyvesant's incoming class is at least 800 students, meaning Defendants' 20 percent Discovery set-aside reserves more than 160 seats each year for students with scores

3

below the overall SHSAT cutoff. Absent the expansion of the Discovery program, those seats would have been available to students admitted through the standard SHSAT process. Restoring those seats would have lowered Stuyvesant's cutoff score by at least three points, to a level at or below M.P.'s score of 558. M.P. therefore would have been offered admission to Stuyvesant were it not for the Discovery program changes.

13.     A Department of Education analysis using 2019 SHSAT data concluded that setting aside 20 percent of seats for the Discovery program increased the cutoff score for Stuyvesant by ten points, from 552 to 562. The set-aside had a similar effect for the 2025 SHSAT.

14.     Because of the increased cutoff score, M.P. was denied admission to Stuyvesant, his preferred school, and offered admission to his second choice. If he is unable to attend Stuyvesant starting this fall, M.P. plans to retake the SHSAT and reapply to Stuyvesant as a ninth grader.

15.     Chen has two other children. Ma.P. is a fourth grader at P.S. 185 in Brooklyn who has begun active SHSAT preparation, including regularly working through practice exam questions from prior tests. He plans to take the SHSAT in 2029 as an eighth grader and list Stuyvesant as his top choice. P.P. is currently a first grader at P.S. 185.

16.     Because of the Discovery program changes, Chen's children are excluded from competing for 20 percent of the seats at each SHS. The restructuring of Discovery has made it more difficult for them to gain admission to any SHS, and to their preferred schools.

### DEFENDANTS

17.     Defendant Zohran Mamdani is the Mayor of New York City. In his capacity as Mayor, Mamdani exercises ultimate authority over the New York City Department of Education

(DOE) and the admissions process at the SHSs, subject to state law. He is sued in his official capacity.

18. Defendant Kamar H. Samuels is the Chancellor of the DOE. Defendant Samuels serves at the pleasure of the Mayor, and the DOE operates under the Mayor's authority. Samuels is charged with overseeing New York City's public schools, including the SHSs. He is sued in his official capacity.

19. Defendant Mamdani took office as Mayor in January 2026, and Defendant Samuels serves as his Chancellor. Although the admissions changes challenged here were initially adopted in 2018 under former Mayor Bill de Blasio and former Chancellor Richard Carranza, Defendants Mamdani and Samuels continue to apply and enforce those changes, including in the 2026 admissions cycle.

20. Defendant New York City Department of Education (DOE) is a municipal agency of the City of New York responsible for administration and operation of the City's public school system, including the SHSs. The DOE receives federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and is therefore subject to Title VI's prohibition on discrimination based on race, color, or national origin. DOE is responsible for implementing, administering, and enforcing the admissions policies challenged in this action.

## GENERAL ALLEGATIONS

## I. NEW YORK CITY'S SPECIALIZED HIGH SCHOOLS

21. The DOE operates the City's SHSs, including some of the most rigorous and prestigious public secondary schools in the United States. Most prominent among them are the oldest: Stuyvesant High School (Stuyvesant), Bronx High School of Science (Bronx Science),

and Brooklyn Technical High School (Brooklyn Tech), collectively referred to as the "Big Three." These schools offer students access to a world-class education and a pathway to the nation's elite universities.

22.    Stuyvesant is widely regarded as the most selective and prestigious of the SHSs. It enrolls approximately 3,200 students, including a substantial number from economically disadvantaged backgrounds. Its students achieve extraordinary academic success: recent data show average SAT scores around 1500 and a four-year graduation rate of approximately 99 percent. Stuyvesant has produced four Nobel Laureates and numerous leaders in science, law, and public life.

23.    The remaining SHSs are Brooklyn Latin School (Brooklyn Latin); High School for Mathematics, Science and Engineering at City College (HSMSE); High School of American Studies at Lehman College (HSAS); Staten Island Technical High School (Staten Island Tech); and Queens High School for the Sciences at York College (Queens Science).

24.    The Fiorello H. LaGuardia High School of Music and Art and Performing Arts is a specialized high school, but because it is arts-focused and uses an audition process for admissions, it is not relevant to this lawsuit.

## II.    RACIAL DEMOGRAPHICS OF THE SPECIALIZED HIGH SCHOOLS

25.    According to public data maintained by the City, as of the 2024–25 school year, the racial demographics of the New York City public school system were 42.3 percent Hispanic, 19.3 percent black, 18.7 percent Asian (listed as "Asian and Pacific Islander"), and 16.1 percent white.[1]

---

[1] *Demographic Snapshot 2024-25: Visual Guide*, NYC Public Schools, https://infohub.nyced.org/docs/default-source/default-document-library/2024-25-demographic-snapshot-summary.pdf, at 5.

26.     According to the City's "Demographic Snapshot" spreadsheets, the SHSs have a predominantly Asian student population, comprising about 60 percent of students. Each of the SHSs has a higher percentage of Asian students than New York City public schools as a whole.[2]

27.     The Big Three, which have much larger enrollments than the other SHSs, are majority Asian. According to the Demographic Snapshot, in 2024–25, Stuyvesant was 71.8 percent Asian, Bronx Science was 60.8 percent Asian, and Brooklyn Tech was 58.5 percent Asian.

## III.     THE SHSAT

28.     Under a New York law enacted in 1971, known as the Hecht-Calandra Act, admission to the SHSs must be based "solely and exclusively by taking a competitive, objective and scholastic achievement examination, which shall be open to each and every child in the city of New York." N.Y. Educ. Law § 2590-g(12)(b) (1997). The current version of the statute incorporates that requirement by reference. N.Y. Educ. Law § 2590-h(1)(b).

29.     The SHSs use the Specialized High School Admissions Test (SHSAT) as the sole factor in admissions decisions. To be eligible for the SHSAT, a student must be a City resident and currently in eighth grade or a first-time (i.e., not repeating the grade) ninth grader.

30.     Students seeking admission to an SHS must take the SHSAT and rank their preferred schools in order (they need not rank all eight). Students are then ordered from highest to lowest SHSAT score and assigned, in that order, to the highest-ranked school on their list that has an available seat. If a student's first-choice school is full, the student is considered for his or her second choice, and so on. After all available seats across the SHSs are filled, no additional students are admitted based solely on SHSAT score.

---

[2]     *See* https://infohub.nyced.org/docs/default-source/default-document-library/demographic-snapshot-2020-21-to-2024-25-public.xlsx.

31.     Once all SHSAT seats are filled at a school, the lowest SHSAT score among admitted students is referred to as that school's "cutoff" score.

32.     Cutoff scores can vary from year to year. For the 2026–27 school year, Stuyvesant's cutoff was 561—the highest of any SHS.[3] The overall cutoff, set by Brooklyn Latin at 495, was the lowest score at which any student was admitted through the SHSAT process.

## IV.     THE DISCOVERY PROGRAM

33.     The Hecht-Calandra Act permits establishment of a "Discovery program" to help some low-income students gain admission into the SHSs. N.Y. Educ. Law § 2590-h(1)(b). State law expressly requires that the Discovery program must not "in any manner interfer[e] with the academic level of those schools." N.Y. Educ. Law § 2590-g(12)(d) (1997).

34.     Prior to the changes challenged here, the Discovery program was open to all New York City students who were economically disadvantaged.

35.     Hecht-Calandra establishes requirements for participation in Discovery. To be eligible, a student must (1) take the SHSAT and score just below the overall cutoff; (2) be certified as disadvantaged; (3) be recommended as having "high potential for the special high school program"; and (4) successfully complete a summer preparatory program. N.Y. Educ. Law § 2590-g(12)(d) (1997).

36.     New York state law does not prescribe the size of the Discovery program, and historically each SHS set its own Discovery numbers. Between 2006 and 2015, only one to three percent of SHS admissions came through Discovery. Stuyvesant did not participate in Discovery at all for many years, and in 2018 admitted only 23 students through the program out of a freshman class of more than 800.

---

[3] *Specialized High Schools*, NYC Public Schools, https://www.schools.nyc.gov/enrollment/enroll-grade-by-grade/specialized-high-schools.

37.     In 2018, the year before the Discovery program changes were announced, a total of 270 students participated in the program across all SHSs, representing less than five percent of the total number of students admitted.

38.     Because students in the Discovery program score below the overall cutoff, this year all Discovery students admitted to Stuyvesant will have scored below 495—at least 66 points lower than students admitted based solely on the SHSAT.

39.     Prior to the challenged changes, approximately two-thirds of the students participating in the Discovery program were Asian American. These students were, by definition, economically disadvantaged.

## V.     DEFENDANTS' CHANGES TO DISCOVERY

40.     On June 3, 2018, then-Mayor de Blasio and then-Chancellor Carranza announced a plan to expand and reorganize the Discovery program. All SHSs were directed to increase the share of students admitted through Discovery to 20 percent of their incoming classes by 2020.

41.     The plan also imposed a new eligibility restriction for Discovery. Specifically, eligibility was limited to students attending middle schools with an "Economic Need Index" (ENI) of 0.6 (60 percent) or higher.

42.     A school's ENI is a metric used to estimate the average level of economic need among its student population. It is the average of the "Economic Need Values" (ENV) of all students attending that school, which are based on factors such as eligibility for public assistance, living in temporary housing, and census-tract poverty data. Each student's ENV, and thus each school's ENI, falls between 0.0 and 1.0 (0% and 100%).

43.     The ENI restriction imposed in 2018 limited eligibility for Discovery not simply to poor students, but to poor students who attend particular middle schools. As a result, an eighth

grader attending a school with an ENI below the 0.6 threshold is ineligible for Discovery, even if that student meets the highest indicators of economic need—such as qualifying for public assistance or living in temporary housing.

44.    M.P.'s middle school, I.S. 239, has an ENI below the 0.6 threshold. As a result, M.P. and his classmates are ineligible for the Discovery program regardless of their economic circumstances.

45.    The SHS admissions changes were fully implemented starting in the 2020–21 school year. They have remained in place, and Defendants continue to implement and enforce those changes.

### A.  The Changes Were Designed To Disadvantage Asian Students

46.    Defendants designed the Discovery changes in an effort to increase black and Hispanic enrollment at the SHSs at the expense of Asian students. Defendants' estimate, based on internal modeling, was that offers to black and Hispanic students would increase from 9 percent to 16 percent under the new plan.

47.    Because SHS admission is a zero-sum process, increasing admissions for a particular demographic group reduces the number of seats available to others.

48.    Defendants designed and selected an ENI restriction of 0.6 to exclude students attending middle schools with substantial Asian-American populations that had historically sent many students to the SHSs. Based on ENI data considered when designing the policy, a disproportionate number of majority Asian-American schools were rendered ineligible for Discovery compared to majority black and majority Hispanic schools.

49.    When Defendants designed the plan, they relied on 2016–17 ENI calculations in deciding what ENI restriction to impose. Under those calculations, students at about 75% of the

majority Asian-American schools with eighth grade enrollment would be excluded from the Discovery program by a 0.6 ENI restriction.[4] Although the 2017–18 school year ENI calculations were not as stark, students attending 11 of the 24 majority Asian-American schools were rendered ineligible for Discovery under the 0.6 ENI restriction. That compares to just 15 of the 185 majority black schools and just seven of the 232 majority Hispanic schools with eighth grade enrollment.

50.     A simple expansion of the Discovery program without an ENI restriction would have increased offers to economically disadvantaged students regardless of race. But because Asian Americans already constituted roughly two-thirds of Discovery participants, expansion alone would not have served Defendants' goal of altering the racial composition of students at the SHSs.

51.     Use of a 0.6 ENI restriction transformed the expansion of Discovery into a racial proxy. If Defendants' objective had been solely to increase the number of low-income students in the program, there would have been no need to restrict eligibility based on school-level ENI thresholds.

### B.  Contemporaneous Public Comments Show Racial Intent

52.     In reference to the demographics of the SHSs, the day before announcing the Discovery changes, Mayor de Blasio wrote in an op-ed: "Can anyone defend this? Can anyone look the parent of a Latino or black child in the eye and tell them their precious daughter or son

---

[4]     *See*   https://infohub.nyced.org/docs/default-source/default-document-library/demographic-snapshot-2016-17-to-2020-21-public.xlsx.

has an equal chance to get into one of their city's best high schools?"[5] He referred to the racial demographics of the SHSs as a "monumental injustice."

53.     The day that the changes were announced, de Blasio tweeted: "Stuyvesant High School just admitted almost a thousand students, but only ten of those students were African American and less than thirty were Latino. In a city that is majority African American and Latino."[6]

54.     Referring to the large proportion of Asian-American students at the SHSs, Chancellor Carranza stated in an interview with New York's Fox affiliate WNYW that "I just don't buy into the narrative that any one ethnic group owns admission to these schools."[7]

55.     The City's press release announcing the Discovery program changes noted that they were intended to "support greater . . . racial . . . diversity" at the SHSs.[8] It presented the revised Discovery program as an important step in making the admission process "fairer." It also stated that the SHS student population "is not representative of the New York City high school population" because "Black and Latino students comprise 9 percent of SHS offers, but 68 percent of all New York City high school students" and because "[t]he incoming freshman class at Stuyvesant High School only has 10 African-American students in a class of more than 900."[9]

---

[5] Bill de Blasio, *Our Specialized Schools Have a Diversity Problem. Let's Fix It.*, Chalkbeat (June 2, 2018), https://chalkbeat.org/posts/ny/2018/06/02/mayor-bill-de-blasio-new-york-city-will-push-for-admissions-changes-at-elite-and-segregated-specialized-high-schools/.

[6] Then-Mayor Bill de Blasio, tweeting from the @NYCMayor account (June 3, 2018), https://twitter.com/nycmayor/status/1003414958464487425.

[7] Elizabeth A. Harris & Winnie Hu, *Asian Groups See Bias in Plan to Diversify New York's Elite Schools*, N.Y. Times (June 5, 2018), https://www.nytimes.com/2018/06/05/nyregion/carranza-specialized-schools-admission-asians.html.

[8] Office of the Mayor, *Mayor de Blasio and Chancellor Carranza Announce Plan to Improve Diversity at Specialized High Schools* (June 3, 2018), https://a860-gpp.nyc.gov/concern/nyc_government_publications/nc580q26h.

[9] *Id.*

The press release emphasized that City modeling suggested that the revised Discovery program would result in 16 percent of offers going to black and Latino students—up from a rate of 9 percent.

56.    Quotes in the press release from supportive public officials emphasized the racial focus of the proposed plan. Mayor de Blasio is quoted as saying, "[f]or far too long our specialized high schools have failed to reflect the diversity of our city" and that "[w]e cannot let this injustice continue." Board of Regents Chancellor Betty A. Rosa called the proposal a "bold plan to . . . support greater equity at New York City's specialized high schools." City Council member Ydanis Rodriguez stated that changing the SHS admissions policy "is an important step in ensuring the student population reflects the city's population." Other quotes likewise focused on "equity," "diversity," and "students of color," and repeatedly connected the racial makeup of the SHSs to the proposed admissions changes.[10]

57.    In announcing the changes, de Blasio and Carranza also declared their intention to eventually eliminate the SHSAT requirement. They predicted that this part of their plan, which would require the New York legislature to repeal the Hecht-Calandra Act, would increase black and Hispanic enrollment at the SHSs to 45 percent. Like their change to the Discovery program, de Blasio and Carranza sought elimination of the SHSAT on the ground it would change the racial balance of the SHSs, again at the expense of Asian students.

**C.  Internal Documents Show Racial Intent**

58.    Internal documents from DOE and the Mayor's office show that one of the primary goals in changing the SHS admissions policy was to increase the percentage of black and Hispanic students accepted into the schools, at the expense of Asian students.

---

[10] *Id.*

59.    An internal DOE slide deck dated April 2018 states that the SHSs "are much less racially diverse than NYC high schools overall" and includes a chart showing that 62% of students at the SHSs were Asian, as compared to 16% of all City high schools. It states that one of DOE's "guiding principles" in changing the admissions process is to "[i]ncrease the diversity" of the SHSs. It further notes that researchers had modeled the effect of alternative admissions processes, but that "without incorporating geography there was no substantial change to the percent of Black and Hispanic students offered seats at Specialized High Schools." Indeed, "in many of the models the percentage of Black students decreased."

60.    The slide deck dismisses alternative admissions approaches—such as using recommendation letters, interviews, or writing assessments—because they are "unlikely to increase diversity." Instead, it proposes options with a greater racial effect, such as reserving seats for top students at each middle school. It also discusses the plan that Defendants ultimately implemented—to "[a]djust and expand the Discovery program to achieve more racial diversity." According to the slides, modeling showed that expanding the Discovery program and including an ENI restriction would mean "[m]ore Black and Hispanic students would become eligible for Discovery."

61.    An April 2018 DOE email chain discussed proposals to change the SHS admissions process. Deputy Chancellor Josh Wallack asked: "given the low percentage of black students in Discovery, how much bigger would the Discovery program need to be at Bronx Science (as an example) to increase the percentage of black students by 1%?" Director of Research and Policy Nadiya Chadha responded that it was "an imperfect calculation" but that "to increase the population of Black ninth graders" by about 1%, "the program would need to expand to ~60 students (6x larger than their summer 2017 program)." However, she noted that if

Discovery expansion included an ENI restriction, that "would not require as large a program, since it would be easier to target Black students directly for that program."

62.    Later in the same email chain, Chadha provided modeling showing how different ENI restrictions would affect the racial composition of the SHSs. She evaluated ENI levels of 40%, 60%, and 80% and stated: "in the 60% model, the minimum discovery cut score does drop, but the pool is more diverse and the average proficiency of students barely changes." Chadha noted, however, that just changing the Discovery program and adding an ENI restriction would not have as great a racial effect as other proposals and called Asian students "overrepresented" at the SHSs: "Even if we expand Discovery and adjust the definition, the percentages of students by race do not change drastically (compared to our other proposals). Asian and White students are similarly overrepresented; the total Black and Hispanic percentage increases from 10% to 18% at most."

63.    A May 30, 2018, email from Chadha was particularly blunt, stating that "we currently want to use the Discovery program as a lever to admit more Black and Hispanic students."

64.    Defendants' racial focus is also evident in an internal DOE document titled "Making admissions to the Specialized High Schools more equitable for all students." It claims that the student population at the SHSs "does not represent the full breadth and excellence of New York City students," including because "Black and Hispanic students make up 68% of the NYC high school population, but only 9% of those offered a seat in a Specialized High School." It discusses the plan to expand Discovery and add an ENI restriction, stating that "[a]s a result, offers to Black and Hispanic students across the Specialized High Schools would nearly double, going from ~9 percent currently to ~16%."

15

65.    Other internal emails confirm that DOE ran modeling to determine the racial effect of its proposed plan. In August 2018—two months after the plan was announced—DOE Press Secretary Will Mantell emailed DOE officials to state that "CH" (City Hall) was "asking what we expect the racial breakdown to be once we're at scale under the new eligibility criteria." Chadha responded with a chart showing "rough estimates" of the effect of expanding Discovery to 20 percent with a 0.6 ENI restriction. According to Chadha, the racial composition of students in Discovery would change significantly: Asian students would drop from 64% to 38%, whereas black students would increase from 10% to 22% and Hispanic students from 12% to 31%:

| Ethnicity | Percent of students who received SHS offers through Discovery, for fall 2018 admissions [preliminary] | Model for expanded Discovery [20% of seats, 60% ENI minimum]* |
|---|---|---|
| Asian | 64% | 38% |
| Black | 10% | 22% |
| Hispanic | 12% | 31% |
| White | 11% | 7% |
| Other | 2% | 2% |
| Unknown | 2% | N/A |
| *Data for students who would have been eligible to apply for Discovery in summer 2017. Does not reflect income eligibility or student interest in participating. | | |

## VI.    PRIOR LAWSUIT

66.    In December 2018, a coalition of plaintiffs—which then included Chen—filed a lawsuit against Mayor de Blasio and Chancellor Carranza, alleging that the plan to revise the Discovery program violated the Equal Protection Clause.

67.    The plaintiffs sought a preliminary injunction to prevent implementation of the Discovery changes, but the district court denied the request. *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253 (S.D.N.Y. 2019). As part of that ruling, the court concluded Chen lacked standing because her son was then in first grade and too young for his injury to be imminent. *Id.* at 272.

68.    Chen's dismissal was jurisdictional, not on the merits. Her son M.P. has now taken the SHSAT, received his score, and been denied admission to Stuyvesant as a direct result of the Discovery program changes.

69.    The other lawsuit continued without Chen. After limited discovery, the City sought summary judgment, arguing that aggregate disparate impact is a necessary element of an equal protection claim and that the overall percentage of Asians at the SHSs had increased slightly following the Discovery program changes. The district court agreed and granted summary judgment. *Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*, 627 F. Supp. 3d 253 (S.D.N.Y. 2022).

70.    On appeal, the Second Circuit reversed, holding that an aggregate disparate impact is not a required element of an equal protection claim. *Chinese American Citizens Alliance of Greater New York v. Adams*, 116 F.4th 161 (2d. Cir. 2024). It held that proof of discriminatory intent combined with a negative effect on individual Asian-American applicants is sufficient to trigger strict scrutiny. *Id.* at 165. The court also noted that expert analysis showed that "under the revised Discovery Program, the number of Asian Americans receiving offers to the two most selective SHSs, Stuyvesant and Bronx Science, declined," which supported the claim of an equal protection violation. *Id.* at 169, 178.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Violation of the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983)**

71.    Plaintiff hereby realleges and incorporates each of the preceding paragraphs as though fully set forth herein.

17

72.    The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

73.    Defendants were and are acting "under color of state law" within the meaning of 42 U.S.C. § 1983.

74.    Facially neutral state action violates the Equal Protection Clause when it is motivated by a racially discriminatory purpose and has a discriminatory effect. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977).

75.    The plan to expand and reorganize the Discovery program was intended to racially balance the schools by increasing the number of black and Hispanic students and limiting the number of Asian students who are admitted.

76.    The Discovery program changes were made "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

77.    Defendants expected and intended the changes to reduce the number of Asian Americans who are admitted to the SHSs and to exclude some Asian Americans from being accepted into their preferred SHSs.

78.    Facially neutral policies enacted with discriminatory intent are subject to strict scrutiny and are invalid unless the government can prove that they are narrowly tailored to further a compelling government interest. *Students for Fair Admissions*, 600 U.S. at 206–07.

79.    The same equal protection principles apply whether race is used explicitly or as a proxy through facially neutral criteria designed to produce race-based outcomes.

80.     There are limited circumstances in which race-based governmental action may be permissible, including remedying specific instances of past discrimination that violated the Constitution or a statute, or avoiding imminent and serious risks to human safety in prisons. No such circumstances are present here, and there is no compelling government interest supporting Defendants' changes to the SHS admissions policy.

81.     Even if a compelling government interest existed, Defendants' changes to the Discovery program are not narrowly tailored, including because they rely on overbroad and arbitrary classifications, are not necessary to achieve a compelling interest, and do not have a logical endpoint.

82.     To survive constitutional scrutiny, a public school admissions policy must comply with "the twin commands of the Equal Protection Clause." *Id.* at 218. First, "an individual's race may never be used against him in the admissions process." *Id.* And second, race "may not operate as a stereotype." *Id.*

83.     Defendants' changes to the Discovery program violate the "twin commands" because they use facially neutral criteria as a proxy for race and operate to disadvantage Asian-American applicants. By selecting an ENI threshold specifically because DOE modeling showed it would reduce Asian-American admissions, Defendants used race as a negative in the admissions process. Defendants also relied on the stereotype that there are too many Asians at the SHSs.

84.     Chen, individually and on behalf of her minor children, is entitled to injunctive relief to prevent Defendants from continuing to enforce the Discovery changes and a declaration that the changes are unconstitutional.

85.    Because the Discovery program changes resulted in M.P. being denied admission to his preferred SHS, Plaintiff is entitled to appropriate injunctive relief, including an order requiring M.P.'s admission to Stuyvesant starting in the 2026–27 school year.

## SECOND CAUSE OF ACTION

### (Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, against the DOE only)

86.    Plaintiff hereby realleges and incorporates each of the preceding paragraphs as though fully set forth herein.

87.    Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

88.    Title VI creates a private right of action for individuals harmed by intentional discrimination on the basis of race by recipients of federal financial assistance. *See Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001).

89.    Defendant DOE receives substantial federal funds each year, including under Title I of the Elementary and Secondary Education Act, and the SHS admissions process constitutes a "program or activity" within the meaning of 42 U.S.C. § 2000d-4a.

90.    The DOE adopted and continues to enforce the Discovery program changes for the purpose of reducing the number of Asian-American students admitted to the specialized high schools.

91.    Title VI prohibits discrimination "on the ground of" race. Under the governing standard, a Title VI plaintiff need only show that discrimination was a substantial or motivating factor.

92.    DOE's changes to the Discovery program and to SHS admissions were intentional and discrimination was a substantial or motivating factor in the changes.

93.    But for the race of Asian-American students, the DOE would not have expanded and restructured the Discovery program as it did. The purpose of the changes was to increase the share of black and Hispanic students and reduce the share of Asian-American students at the SHSs, and DOE's own modeling confirmed that the ENI threshold was designed to target middle schools with substantial Asian-American populations.

94.    The ENI restriction was a but-for cause of the exclusion of Asian-American applicants from 20 percent of SHS seats.

95.    M.P. was harmed by the DOE's intentional discrimination on the basis of race. But for the race-based manipulation of the Discovery program, M.P. would have been admitted to Stuyvesant.

96.    DOE's continued enforcement of the Discovery program changes constitutes ongoing intentional racial discrimination in violation of Title VI. Chen, individually and on behalf of her minor children, is entitled to appropriate declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. An entry of judgment declaring that Defendants' expansion and reorganization of the Discovery program for admission to New York City's specialized high schools violates the Equal Protection Clause and Title VI of the Civil Rights Act of 1964.

2. Entry of a preliminary and permanent injunction against Defendants prohibiting them from continuing to enforce the changes to the Discovery program.

3. Entry of a preliminary and permanent injunction against Defendants requiring that Plaintiff's child M.P. be admitted to Stuyvesant High School starting in the 2026-27 school year.

4. Nominal damages in the amount of $1.00.

5. An award of attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988.

6. An award of any further legal or equitable relief this Court may deem just and proper.


DATED: April 23, 2026.

Respectfully submitted,

/s/ Dean McGee
Dean McGee, N.Y. Bar No. 5135884
Christopher D. Barnewolt, D.C. Bar No. 90020413*
Caitlyn Kinard, D.C. Bar No. 90029259*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Ste. 1000
Arlington, VA 22201
Telephone: (202) 888-6881
DMcGee@pacificlegal.org
CKinard@pacificlegal.org
CBarnewolt@pacificlegal.org

Glenn E. Roper, Colo. Bar No. 38723*
PACIFIC LEGAL FOUNDATION
1745 Shea Center Dr., Ste. 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
GERoper@pacificlegal.org

*Counsel for Plaintiff Yi Fang Chen, individually and on behalf of her minor children M.P., Ma.P., and P.P.*

*pro hac vice motions forthcoming